UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

MONSANTO COMPANY                                                PLAINTIFF

VS.                    CASE NO.: 2:04-CV-208 JMM

JOE KYLE a/k/a JOEY KYLE;
BILLY KYLE a/k/a BROTHER KYLE
a/k/a BROTHER BILLY KYLE;
JOE-CO;
J & B AG, INC.; and
J & C AG, INC.                                                  DEFENDANTS

BRIEF IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER

Monsanto Company (hereinafter "Monsanto"), by its attorneys, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C. and Frilot, Partridge, Kohnke & Clements, L.C., in support of its Motion for Protective Order, submits this brief.

## I. Introduction

Defendants have propounded 96 Requests for Production of Documents and Things, which encompass virtually the entire universe of records and documents generated or possessed by Monsanto and its counsel. Responding to these requests would be unduly burdensome, oppressive, and unreasonably expensive, especially when compared to the scope of the underlying litigation. As articulated below, a Protective Order should be entered limiting the defendants' discovery requests, thereby allowing Monsanto to make specific responses and objections to discovery that is focused on the issues in this litigation.

## II. Background of the Case

On November 29, 2004, Monsanto filed its Complaint alleging a single count of patent infringement against the defendants. [Doc. #1]. The gravamen of Monsanto's Complaint alleged that defendants planted saved Roundup Ready soybeans, thereby infringing upon one of Monsanto's patents on the Roundup Ready trait. The Defendants' Answer generally denied Monsanto's allegations, contained no affirmative defenses, and asserted no counterclaims. [Doc. #11]. Shortly thereafter, Monsanto moved to file a First Amended Complaint in order to bring the correct parties into the action (i.e., Joe Kyle, J&C Ag. Inc. and J&B Ag, Inc.) and to dismiss defendant Lenny Joe Kyle. [Doc. #25]. Defendants' Answer to Monsanto's First Amended Complaint again contained no affirmative defenses, nor did it assert any counterclaims. [Doc. #26].

As was required by the Court's Initial Scheduling Order, the parties discussed a case management and discovery plan. Pursuant to those discussions, the parties submitted the jointly-prepared Report of Parties' Planning Meeting which was filed on March 18, 2005. [Doc. #27]. In the Report, each party set out their expected topics of discovery as follows:

> A.  Plaintiff proposes that discovery will be needed on the following subjects:
>
> 1.  Defendants' farming practices;
>
> 2.  Inputs used by the defendants in planting and growing soybeans;
>
> 3.  Defendants' acquisition of soybean seed;

  4. Historical yields obtained by defendants in their soybean crop production;

  5. Defendants' use of seed cleaning services for soybeans and identification of all business entities used by defendant for soybean seed cleaning; and

  6. Defendants' disposition of soybean seed produced by their farming operations;

 B. Defendants propose that discovery will be needed on the elements of plaintiff's claims.

[Doc. #27]. Monsanto's proposed discovery topics were simply stated and directly linked to the factual allegations of its Complaint. Although defendants' proposed discovery subjects were somewhat vague, they were still logically connected to the facts of the case.

On May 31, 2005, defendants simultaneously filed their First Amended Answer and Original Counterclaim, [Doc. #35] and served Monsanto with 96 individually numbered Requests for Production and Things. *See* Defendants' Third Set of Requests for Production of Documents to Plaintiff Monsanto Company ("Requests for Production"), attached to Monsanto's Motion as Exhibit "1." In this amended pleading, defendants allege only bare-bones patent law defenses, and almost zero factual allegations concerning those defenses or their roughly parallel counterclaims[1]. Despite the vague allegations of defendants' pleading, their concurrently served Requests for Production are extremely expansive, having the cumulative effect of a boundless request

---

[1]  In fact, Defendants' affirmative defenses and counterclaims have been pled so deficiently and so devoid of facts, that Monsanto has been forced to file a Motion to Dismiss and Strike the Affirmative Defenses and Counterclaims. [Doc. # 39].

to inspect all documents of Monsanto and its attorneys. As is explained below, the Requests for Production are so broad, so ill-defined, and so far-reaching that attempting to comply with and respond to these requests would impose a monumental burden upon Monsanto and literally cost hundreds of thousands of dollars.

### III. The Nature of Defendants' Requests for Production

The defendants' 96 individually numbered document requests,[2] are not easily categorized, but can roughly be delineated by the following subjects:

1. *All* documents related to the research and development of the Roundup Ready technology and Roundup Ready crops;

2. *All* documents generated during the activities related to patenting the Roundup Ready technology including the patents and the patent application;

3. *All* documents generated regarding Monsanto's commercial and business relationships with others on the subjects of biotechnology research, the Roundup Ready technology, the licensing of the Roundup Ready technology, and Roundup branded herbicides;

4. Licenses, and documents concerning the creation of licenses, and agreements for the Roundup Ready technology, Roundup herbicides and herbicide resistant plants; and

---

[2] Several of the individual requests actually cover multiple items and categories. If properly broken down, there would actually be over 130 individual requests.

5. Corporate information including organizational, financial, operational, and personnel information.

For ease of discussion in this motion, the subjects covered by defendants' requests will simply be referred to as: (1) business and commercial issues; and (2) research and development issues.

Simply trying to respond to the requests which touch on business, commercial and licensing issues would involve a monumental undertaking. *See* Affidavit of Steve Joehl ("Joehl Affidavit"), attached to Monsanto's Motion as Exhibit "2." The records and documents sought by the business and commercial requests would consist of over three million pages covering a time period of over ten years. *See* Joehl Affidavit at ¶¶ 7-8. These documents and records are not stored or maintained in the general categories of the defendants' discovery requests, and would require the effort of over 300 Monsanto employees engaged in researching and identifying documents that could be responsive. *Id.* at ¶¶ 8-9. No fewer that 1200 man hours would be expended by these employees, and the expense of researching, identifying and gathering responsive documents would be in excess of $600,000. *Id. at* ¶¶ 9-10.

Moreover, a significant amount of the information sought in the Requests for Production is the confidential, proprietary, trade secret business information of Monsanto. *Id.* at ¶ 11. Releasing this information into the public domain, particularly to Monsanto's competitors, would allow them to position competing products and technologies to Monsanto's detriment, resulting in a competitive disadvantage to Monsanto. *Id.*

5

Similarly, the requests that seek information regarding the creation, research, and development of the Roundup Ready trait, Roundup Ready crops, and related biotechnologies are extremely broad and burdensome. *See* Affidavit of Nancy Beist Taylor ("Taylor Affidavit"), attached to Monsanto's Motion as Exhibit "3." In particular, these requests cover a time frame of more than 30 years and easily encompass in excess of four million pages of documents. *See* Taylor Affidavit at ¶¶ 5, 7-8. To identify and assemble responsive records and documents would require the research and effort of at least 10 Monsanto scientists, each of whom would have to devote their entire schedule to this project. *Id.* at ¶ 9. These scientists would be required to log at least 1600 man hours to complete this project, generating an expense that would readily exceed $240,000. *Id.* at ¶¶ 9-10.

Monsanto also holds a significant amount of the information covered by defendants' research-and-development-related requests as confidential, proprietary, and trade secret information. *Id.* at ¶ 11 This information has been developed by Monsanto over many years in the agricultural industry, and comprises an investment of many millions of dollars. *Id.* Releasing this information into the public domain, particularly to Monsanto's competitors, would allow them to position competing products and technologies to Monsanto's detriment, resulting in a competitive disadvantage to Monsanto. *Id.*

In sum, defendants' Requests for Production cover over seven million pages of documents, span a time frame of more than 30 years, and will cost Monsanto hundreds of

thousands of dollars to research, identify and assemble. To say that these discovery requests are overreaching is a gross understatement.

### IV. Law and Argument

Under Rule 26(c) a party may seek an Order in order to protect it from discovery that would impose "annoyance, embarrassment, oppression, undue burden, or expense . . . ." Fed. R. Civ. Pro. 26(c); *Schoffstall v. Henderson*, 223 F.3d 818, 823, (8th Cir. 2000). A party seeking a protective order must demonstrate good cause, after which the Court may fashion "any order which justice requires" to alleviate the complained of discovery. *Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2*, 197 F.3d 922, 925 (8th Cir. 1999). As demonstrated above, responding to defendants' 96 Requests for Production of Documents and Things would be unduly burdensome and expensive, and good cause exists for the entry of a protective order to limit this discovery.

Although the scope of discovery is quite broad, encompassing "any matter, not privileged, that is relevant to the claim or defense of any party," it is not limitless. *Schoffstall v. Henderson*, 223 F.3d 818, 823. The sweeping scope of discovery defined in Rule 26(b)(1) is confined by the limitations set out in Rule 26(b)(2). Under 26(b)(2), discovery *"shall be limited,"* when:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) *the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in*

*the litigation, and the importance of the proposed discovery in resolving the issues.*

Fed. R. Civ. Pro. 26(b)(2)(emphasis added). This Rule encourages the district courts to apply the principle of proportionality to regulate otherwise excessive or onerous discovery. *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1238 (10th Cir. 2000)(Rule 26(b)(2)(iii) essentially urges judges to rein in extensive discovery); *see also Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 167-168 (S.D. N.Y. 2004). Accordingly, district courts are given broad discretion to narrowly tailor discovery under Rule 26(b)(2). *Compare Crawford-El v. Britton*, 523 U.S. 574, 599-600 (1998)(district courts are afforded several options under Rule 26(b)(2) for tailoring discovery). Indeed, this Court has invoked the discretion afforded by Rule 26(b)(2) in resolving a discovery request that involved great compliance costs. *Concord Boat Corp. v. Brunswick Corp.*, 1997 U.S. Dist. LEXIS 24068 (E.D. Ark. 1997) *rev'd on other grounds*, 207 F.3d 1039 (8th Cir. 2000).

A recent decision by the Tenth Circuit applying 26(b)(2)'s proportionality principle is particularly instructive in the instant case. *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1238. In affirming a district court's order limiting plaintiffs' discovery requests, the Court of Appeals stated:

> When a [party] first pleads its allegations in entirely indefinite terms, without in fact knowing of any specific instances of wrongdoing by the [other party], and then bases massive discovery requests upon those nebulous allegations, in the hope of finding particular evidence of wrongdoing, that party abuses the judicial process. . . . The limits which Rule 26(b)(2)(iii) place upon discovery are aimed at just such a tactic.

203 F.3d 1202, 1238. This is precisely the situation presented by defendant's Requests for Production in this case. The defendants' pleadings are exceedingly sparse, yet their discovery requests seek to find the bottom of the abyss.

For example, defendants' fourth affirmative defense alleges patent invalidity for "failure to comply with the requirements of 35 U.S.C. §§ 102, 103, and/or 112." This factually unsupported allegation covers numerous patent invalidity defenses, such as public use bar, on sale bar, lack of enablement, anticipation, obviousness, and failure to disclose best mode. Defendant's fifth affirmative defense, as well as paragraph 49 of their counterclaim, simply alleges that Monsanto's patent is unenforceable due to patent misuse. Establishing the defense of patent misuse is akin to an antitrust claim – a party must prove that the patentee has impermissibly broadened the scope of its patent with anticompetitive effect. *C.R. Bard, Inc. v. M3 Sys. Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). Not surprisingly, defendants' pleading sets forth no factual allegations in support of these claims. A cursory review of the remainder of defendants' affirmative defenses and counterclaims shows them to be devoid of factual allegations as well.

In short, defendants should not be permitted to engage in such heavy-handed and scorched-earth discovery based on their threadbare pleadings and the state of the case as presently developed. Nowhere in the proposed discovery plan that the parties filed with the Court did defendants allude to their intent to seek such far reaching discovery. Both the burden and the expenses of defendants' proposed discovery far outweigh any potential benefit it may yield.

These discovery requests should be pared down to that which defendants originally intended, i.e., the elements of Monsanto's claims. Furthermore, defendants' requests that cover confidential, proprietary, trade secret information of Monsanto should be eliminated in their entirety. At a bare minimum, defendants should be required to shoulder an equal share of the burden of these discovery requests.[3] After the defendants' requests are appropriately limited, Monsanto can then make specific responses and objections to specific requests that pertain to the legitimate issues in this case.

WHEREFORE, Monsanto Company, prays that this Court enter an Order containing the following relief:

a)   Defendants are required to limit their Requests for Production to the elements of Monsanto's patent infringement claim;

b)   Defendants' Requests for Production that pertain to any of defendants' affirmative defenses and counterclaims that are not supported by any factual allegations are to be stricken;

c)   Defendants' Requests for Production which cover confidential, proprietary, trade secret information of Monsanto are to be stricken;

d)   Defendants must tailor their Requests for Production so that they are not vague, overbroad, and unduly burdensome to respond to;

---

[3] "One method for regulating discovery requests that infringe on the limitations of Rule 26 (b)(2) is to condition orders that such discovery go forward on the payment by the party seeking discovery of part or all of the resulting expense incurred by the responding party." 8 Charles A. Wright, et al., Federal Practice and Procedure §2008.1 (1994 & Supp. 2005); *Thompson v. Dept. of Housing and Urban Development* 199 F.R.D. 168, 171 (D.Md. 2001).

e)   Monsanto shall be permitted to reserve all objections to the specific Requests for Production until served with the Requests as revised pursuant to subparts (a), (b), (c), and (d) above; and

f)   Such further relief as may be proper and ordered by the Court.

Respectfully submitted,

/s/ **John K. Baker**
Ark. Bar No. 97024
Attorney for Monsanto Company
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
(501) 688-8800
E-mail: jbaker@mwsgw.com

- AND -

Miles P. Clements, T.A. (La. #4184)
Joel E. Cape (La. #26001)
Jeffrey A. Masson (La. #28674)
Frilot, Partridge, Kohnke & Clements, L.C.
3600 Energy Centre, 1100 Poydras St.
New Orleans, Louisiana 70163-3600
(504) 599-8000

Attorneys for Monsanto Company

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Mr. John Everett
Everett Law Firm
1944 East Joyce Blvd.
P.O. Box 8370
Fayetteville, Arkansas 72703-8370

Mr. Mark Henry
Nolan Henry, PLLC
204 South East Avenue
Fayetteville, Arkansas 72701

/s/ **John K. Baker**
Ark. Bar No. 97024
Attorney for Monsanto Company
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
(501) 688-8800
E-mail: jbaker@mwsgw.com